# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

BRIAN A. MAUS,

                    Plaintiff,

           -vs-                            Case No.   10-CV-97

WILLIAM POLLARD, PETER ERICKSEN,
CAPTAIN LESATZ, LT. STUTLEEN, LINDMIER,
JOHN DOE, Sgt. at Green Bay Correctional Institution,
WALTON, SCHILLER, JACK DORUFF,
MARK KULIEKE, M. PETERS, MICHAEL MOHR,
TOM GOZINSKE, AMY SMITH, SARAH COOPER,
CAPTAIN DELVAUX, MICHAEL SCHULTZ,
MICHAEL BAENEN, THOMAS CAMPBELL,
LT. SWIEKATOWSKI, HUCK, NOVITSKI,
KAMPHUIS, JULIE DEROCHA, and ZIMONICH,

                    Defendants.

---

## DECISION AND ORDER

---

        The *pro se* plaintiff, who is incarcerated at the Green Bay Correctional Institution (GBCI), is proceeding on retaliation and access to the courts claim based on allegations set forth in the original complaint (Docket Number 1) and the supplemental complaint (Docket Number 4). The defendants have filed a motion for summary judgment, which will be addressed herein.

### I. SUMMARY JUDGMENT STANDARD

        "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th

Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the

outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine"

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by: "(A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B)

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that

an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant

is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS[1]

### A. Parties

The plaintiff was incarcerated at Green Bay Correctional Institution (GBCI) at all

times relevant. He is proceeding on claims that the defendants conspired to deny him access to the

courts and to retaliate against him.

The defendants are: Michael Mohr, institution complaint examiner; Warden William

Pollard; Deputy Warden Michael Baenen; Corrections Complaint Examiner Tom Gozinske; former

---

[1] Facts are taken from the defendants' proposed findings of fact and from the plaintiff's proposed findings of
facts. Proposed facts that do not comply with Federal Rule of Civil Procedure 56 are not included in this section.

Wisconsin Department of Corrections (DOC) Deputy Secretary Amy Smith; DOC Security Director Peter Ericksen; Corrections Program Supervisor Sarah Cooper; Supervising Officers 2 Mark Lesatz, Michael Delvaux, and Michael Schultz; Supervising Officers 1 Mark Stutleen, Robin Lindmier, Thomas Campbell, and William Swiekatowski; Correctional Officers Peter Walton, Tom Novitski, and Timothy Huck; Segregation Property Officer Steven Schiller; Sergeant Richard Process; Social Worker Mark Zimonick; Education Director John Doruff; Librarian Mark Kulieke; Financial Program Supervisor Nicole Kamphuis; Financial Specialist Michelle Highly; and Offender Records Assistant 2 Julie Derocha.

**B. Law Library Claims**

On October 18, 2008, Maus sent former Governor James Doyle a letter stating that GBCI inmates received less than 45 minutes library time per day if they were on a court deadline, inmates were not being allowed to assist each other with legal cases, and that he was not being allowed his legal property. Warden Pollard was forwarded a copy of the letter and on November 7, 2008, he responded to Maus, informing him that he had filed a number of complaints regarding the issues he wrote to Governor Doyle, that Pollard had received decisions on most of the complaints, and that there was no need for Pollard to comment further. Pollard advised Maus that if he was not satisfied with this response or the denial of his complaints, he could appeal to the corrections complaint examiner. Pollard further informed Maus that his letter was being reviewed for possible disciplinary action and that making false statements outside of the Inmate Complaint Review System could result in discipline. (Maus Aff. ¶ 11, Ex. A.) Maus never filed an offender complaint with the inmate complaint examiner's office at GBCI regarding Pollard's response to his letter.

### 1. Allowed Library Time

The services of the library and law library are available to inmates. Inmates may access the law library by submitting a request form to the library. The library will then schedule a pass, usually a one-hour pass, to the inmate for a specific time. An inmate housed in general population may receive library time up to three to four times a week. If the inmate shows proof of an active litigation matter or deadline, the inmate may receive more time. Maus received the same amount of library time as everyone else. However, security controls movement and length of time per period. Inmates who create security threats or disruptive behavior can be refused/terminated law library for the safety of the staff, other inmates and the institution.

Maus submitted Offender Complaint GBCI-2009-3904, which was received by the ICE on February 16, 2009, complaining that he received only 20 minutes of Law Library time on January 26, 2009. Mohr rejected the complaint on February 16, 2009, noting that pursuant to Wis. Admin. Code § DOC 310.11(5)(d), the "inmate submitted the complaint beyond the 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time lines." Maus appealed the decision and on February 18, 2009, the reviewing authority found that the complaint was appropriately rejected by the ICE.

### 2. Legal Assistance to Other Inmates

Wisconsin Administrative Code § DOC 309.155(5) states that inmates may provide legal services to other inmates except that institutions may regulate the time and place of such legal services. At GBCI, inmates are not allowed to provide legal assistance to other inmates in the library. However, GBCI has an alternative mailing system for inmates to send legal mail and materials to other inmates they are assisting or receiving assistance from. Maus was and is eligible

4

to use the Legal Route system to contact other inmates in the institution concerning legal matters. Inmates also have access to the law library, all legal research materials on file in the library, other library facilities, as well as assistance from the librarian and the library clerks with regard to use of the legal materials and location of information. GBCI Policy 900.309.22.01 states that the library is a quiet place, talking is not allowed except when an inmate is quietly talking about library business at the counters or desk with the librarian, library clerks, or security officer. This rule is also posted in the library as a reminder to inmates.

On February 28, 2009, Doruff received a note from Maus objecting to the fact that the library is a quiet place in which you cannot assist others in legal matters or converse with other patrons while working in the library. Doruff responded to Maus' correspondence on March 3, 2009, reminding Maus of GBCI Policy 900.309.22.01.

### 3. Conduct Report 1969086

On February 27, 2009, while assigned to the library, Walton observed Maus and another inmate talking at the law library computer station #6. Walton approached them and informed them that they were not allowed to be at the computer workstation at the same time. The other inmate replied that Maus was helping him with his legal work and Maus confirmed this. Walton informed them that legal clerks were available for help but both inmates argued that they could work on legal materials together and that they would not comply with library procedure. Maus was on a deadline pass which is a special pass which does not include activity other than approved legal work. Walton asked Maus and the other inmate to leave the library.

According to Walton, he asked them to leave because he did not wish further disruption to the others in the library. According to Maus, Walton got mad and kicked them out of the law library because Maus gave the inmate citations to a legal case.

On February 27, 2009, Walton issued Maus Conduct Report 1969086 for violation of Wis. Admin. Code §§ DOC 303.24, disobeying orders, and 303.63, violation of institution policy and procedure by talking and providing legal assistance to another inmate in the library. Walton was motivated in writing the conduct report by his duty to write such reports under Wis. Admin. Code §§ DOC 303.64 - DOC 303.66. Pursuant to these administrative rules, Walton may write a conduct report when, on the basis of his observation and other information he obtains, Walton conclude that an inmate has violated one or more of the prison disciplinary rules, §§ DOC 303.12 - DOC 303.63, as happened in the case of Conduct Report Number 1969086.

Maus asserts that Walton issued Conduct Report #1969086 in retaliation for an incident that occurred four days earlier after which Maus wrote a complaint to Doruff about Walton kicking him out of the law library for arguing with Holterman and for not signing up to use the computers. (Maus Aff. ¶ 101.) However, according to the defendants, the plaintiff's complaint, GBCI-2009-5811, was not acknowledged by the ICE until March 10, 2009, and should therefore be disregarded by the Court.

The disciplinary hearing on Conduct Report 1969086 was held on March 9, 2009. Maus was present at the hearing and Lieutenant Stutleen, the hearing officer, read the conduct report aloud to him. Maus stated that he had a right to help others do their legal work and claimed that the director said he had the right to help other inmates in the library. Stutleen reviewed the statement of the conduct report, Maus' statement, and the law library policy. He found that both Maus and

Walton agreed that Maus was answering a question of another inmate while working on a deadline pass. Stutleen noted that this was in violation of Policy and Procedure 900.309.22.01 (Library Rules), and found Maus guilty of violating Wis. Admin. Code § DOC 303.63. Maus was found not guilty of violation § DOC 303.24. He was given a disposition of 14 days loss of library and the hearing officer noted that this was Maus' second conduct report for violations of § DOC 303.63 and his sixth conduct report of the year.

Maus appealed the decision and claimed that he had been found guilty of Conduct Report 1969086 in retaliation for answering a legal question for an inmate. On March 12, 2009, Pollard reviewed the record of the conduct report and affirmed the decision and the sentence. However, Pollard did return the decision to the hearing officer to complete or correct the record. Stutleen corrected the disciplinary hearing record noting that the box under evidence section (institution rules, policies and procedures are in a handbook given to all offenders) was not checked and it had been checked on the corrected DOC 84 form. Stutleen further noted in this report, that he considered the inmate's statement that he had the right to help other inmates do their legal work, and that the conduct report that states he did talk to another inmate while working at the law library computer. Stutleen found that it more likely than not that Maus violated library rules by answering another inmate's questions while working on a deadline pass, which Maus admitted to doing.

### 4. Offender Complaint GBCI-2009-7523

Maus submitted Offender Complaint GBCI-2009-7523, which was received by the ICE on March 31, 2009, challenging Conduct Report 1969086. On March 31, 2009, Mohr rejected Maus' complaint pursuant to Wis. Admin. Code § DOC 310.11(5)(d) because it was submitted beyond the 14 calendar days from the date of the occurrence giving rise to the complaint. Mohr

noted that Appeal of Adjustment Committee or Hearing Officer was decided on March 12, 2009. Maus appealed the decision and on April 2, 2009, the reviewing authority found that the complaint was appropriately rejected in accordance with Wis. Admin. Code § DOC 310.11(5).

### 5. Offender Complaint GBCI-2009-5811

Maus submitted Offender Complaint GBCI-2009-5811, which was received by the ICE on March 10, 2009, complaining that he was not allowed to give legal advice to other inmates while in the library on February 27, 2009, and that Officer Walton retaliated against him by making him leave the library. Mohr investigated the claim and found that pursuant to Wis. Admin. Code § DOC 309.155(5), inmates may provide legal services to other inmates except that institutions may regulate the time and place of such legal services. During his investigation, Walton informed Mohr that Maus was working at the computer when he approached Maus concerning his talking with another inmate, and that Walton asked Maus to leave the library because he did not wish further disruption in the library. On March 10, 2009, Mohr recommended that Offender Complaint GBCI-2009-5811 be dismissed and the following day, the reviewing authority accepted Mohr's recommendation, and dismissed Offender Complaint GBCI-2009-5811. Maus appealed the decision to the CCE's office, where it was received on March 20, 2009. Gozinske found that the institution's decision reasonably and appropriately addressed the issued raised by Maus. Gozinske noted that Maus presented no information on appeal that would warrant a recommendation to overturn that decision and recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Smith dismissed Offender Complaint GBCI-2009-5811.

### 6. Signing in for Law Library Computer Use

GBCI uses the online Lexus Nexus system in the legal library. Library computers are issued on a first-come, first-serve basis, with preference to inmates on deadline passes. Upon entering the library, inmates are required to sign up for a computer terminal with the officer at the security desk per GBCI Policy and Procedure #900.309.22.04, Electronic Law Library, which states: (A) Electronic Law Library. Signing up for the law library computers does not allow officers or library staff to view the inmate's legal material. Officer or library staff can inquire which case an inmate is researching when on a legal deadline pass. If it is found that the work the inmate is doing is not related to the verifiable court ordered deadline for which the pass was issued, the deadline pass may be suspended immediately and a conduct report issued.

On February 23, 2009, according to the defendants, while Maus was in the in law library using the law computers, Officer Holterman informed him that he had to sign up to use the law library computers. According to Maus, on that day, he had been in the law library using the computers and Holterman stopped him coming out of the libraries and told him he had to sign up to use the computers or he would get a conduct. Maus further avers that he told Holterman he did not have to sign up to use the computers because staff is not allowed to read what he works on.

Officer Holterman issued Maus a warning for not signing in to use the computers as required per GBCI Policy and Procedure. On February 24, 2009, Doruff received a letter from Maus objecting to the procedures for using the electronic law library computers, stating he felt it was illegal to have to sign in. Maus claimed Holterman threatened him with retaliation if he refused to sign up to use the computers by kicking him out of the law library. On February 25, 2009, Walton issued Maus a warning for not signing in to the legal computers. Doruff responded to Maus' letter

on February 26, 2009, advising him that the officer was correct in his directions to sign up to use the computer terminals and that it was GBCI policy for using the electronic law library. Doruff further informed Maus that an officer or library staff can inquire which case he was researching when on a legal deadline pass. Doruff again reminded Maus that failure to abide by the library procedures could result in an inmate's loss of library privileges.

### 7. Conduct Report 1969080

On February 26, 2009, while assigned to the Library, Walton observed Maus enter the library and go a law library computer without signing in the log to use the computer. Walton approached Maus and directed him to sign in to use the computers. Maus did sign in then as directed. As Maus was leaving the library, Walton asked him why he was refusing to sign in to use the computers pursuant to policy and Maus stated that he was filing a John Doe for harassment and that he was not going to sign unless he was told to. On February 26, 2009, Walton issued Maus Conduct Report 1969080 for violation of Wis. Admin. Code §§ DOC 303.24, disobeying orders and 303.63, violation of institution policy and procedure, for using the law library computers without signing in.

The disciplinary hearing on Conduct Report 1969080 was held on March 7, 2009. Maus was present at the hearing and Hearing Officer Stutleen read the conduct report aloud to him. Maus stated that the law library computers were not working on that day and that he was at computer #6, which he claimed had a sign on it stating "Gonna be shut down on the 26th." Stutleen delayed the decision on the conduct report until March 9, 2009, because of Maus' allegation that there was a sign on the computer stating it was not working on February 26, 2009. Stutleen found that the sign actually stated that Bureau of Technical Management was working on the computers and nothing

could be saved. Walton informed Stutleen that the computer was working before Maus got there and that Maus was able to log on to the computer and that it stopped working after Maus logged in.

Based on the evidence of the statements of Walton and Maus, the conduct report, warning card, and policy and procedure of the library, Stutleen found that Maus walked into library and sat down at the computer station and started to use the computer without signing in. Stutleen further found that Maus had previously been warned to sign up for computer use and that he had disobeyed staff orders and GBCI policy to do so did not sign in to use the computers. Because Maus had not signed up to use the computer prior to trying to log on, Stutleen believed that it was more likely than not that Maus violated Wis. Admin. Code §§ DOC 303.24 and 303.63. Stutleen found Maus guilty of the violations and gave him a disposition of seven days loss of library. Maus appealed the decision, claiming that he could not have been found guilty of the conduct report because he did not have to sign up for a computer he was not using and that the computers were not working on February 26, 2009. On March 12, 2009, Pollard reviewed the record of the conduct report and found that the disposition was appropriate.

According to Maus, Stutleen conspired and retaliated with Walton to find him guilty and impose a seven day law library restriction. Maus avers that Stutleen found him guilty to help Walton cover up the illegal conduct report. He further avers that Pollard conspired with Stutleen and Walton by illegally affirming Stutleen's ruling on Conduct Report 1969080.

### 8. Offender Complaint GBCI-2009-6817

Maus submitted Offender Complaint GBCI-2009-6817, which was received by the ICE on March 23, 2009, complaining that Pollard upheld Conduct Report #1969080 to cover up the illegal misconduct to make inmates sign-up to use the computers in the library. On March 23, 2009,

11

Mohr rejected the complaint stating that Maus failed to identify any procedural error in Conduct Report 1969080, only that he believes the institution may not require a system for the orderly usage of the computers. Mohr noted that GBCI-2009-6817 contained more than one issue or the issue was not clearly identified and therefore would not be addressed per Wis. Admin. Code § DOC 310.09(1)(2). Maus appealed the decision and on March 25, 2009, the reviewing authority found the complaint was appropriately rejected in accordance with Wis. Admin. Code § DOC 310.11(5).

### 9. Offender Complaint GBCI-2009-5624

Maus submitted Offender Complaint GBCI-2009-5624, which was received by the ICE on March 9, 2009, complaining that he is required to sign in to use the computers in the library. Mohr investigated the claim and found that GBCI Policy and Procedure #900.309.22.04, Electronic Law Library states: (A) Electronic Law Library computers are issued on a first-come, first-serve basis, with preference to inmates on deadline passes; (B) Upon entering the library, sign-up for a computer terminal with the officer at the security desk. On March 9, 2009, Mohr found there was no violation of the Administrative Code in the policy and recommended that the complaint be dismissed. On March 11, 2009, the reviewing authority accepted Mohr's recommendation and dismissed GBCI-2009-5624. Maus appealed the decision and on April 6, 2009, Gozinske noted that Wis. Admin. Code § DOC 310.13(1) requires appeals to be received and accepted at the CCE office within ten calendar days after the reviewing authority's decision. Noting that the complaint was decided on March 11, 2009 and received in the CCE's office on April 6, 2009, and Maus offered no good cause for the late submission, Gozinske recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Smith dismissed GBCI-2009-5624 on April 6, 2009.

### 10. Malfunction of Law Library Computers

The Electronic Law Library was temporarily not functioning on February 25, 2009. The problem was a technical malfunction that could only be handled by technicians from Madison Control. The malfunction was unplanned and corrected in a timely manner. The Electronic Law Library was operational again the next day on February 26, 2009. Maus claims that the law library computers were not working on February 26, 2009, and that he was at computer terminal #6, which he claimed to have a sign on it stating "Gonna be shut down on the 26th." According to the defendants, the sign on computer terminal #6 actually stated that Bureau of Technical Management was working on the computers and nothing could be saved. They also assert that the computer was working before Maus got there on February 26, 2009, and he was able to log on to the computer.

### 11. Offender Complaint GBCI-2009-6205

Maus submitted Offender Complaint GBCI-2009-6205, which was received by the ICE on March 16, 2009, complaining that the computers in the law library were not working on "Feb. 25, 26, 2009." The complaint was returned to Maus with instructions to attempt to resolve the issue by contacting Doruff. Maus wrote a letter to Doruff and Doruff responded to Maus' letter informing him that he was aware that the Electronic Law Library was temporarily not functioning on February 25, 2009. Doruff stated that the malfunction was corrected in a timely manner and that the Electronic Law Library was operational again the next day on February 26, 2009. Mohr informed Maus that he should contact the court if he feels he missed a deadline due to the technical problems.

On March 16, 2009, Mohr recommended that the complaint be affirmed. On March 20, 2009, the reviewing authority accepted Mohr's recommendation, and affirmed GBCI-2009-6205. Maus appealed the decision and on April 6, 2009, Gozinske noted that Wis.

Admin. Code § DOC 310.13(1) requires appeals to be received and accepted at the CCE office within ten calendar days after the reviewing authority's decision. Noting that the complaint was decided on March 20, 2009 and received in the CCE's office on April 6, 2009, and Maus offered no good cause for the late submission, Gozinske recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Smith dismissed GBCI-2009-6205 on April 9, 2009.

### 12. Law Library Restriction

On March 9, 2009, Maus was given a disposition of seven days loss of library on Conduct Report 1969080 and a disposition of fourteen days loss of library on Conduct Report 1969086. Kulieke did not personally participate in any decision regarding the disposition of the two conduct reports. On March 16, 2009, Kulieke received a Request for Legal Materials form from Maus requesting to borrow legal materials. Kulieke responded to Maus' request on March 16, 2009, informing him that the legal materials he requested to borrow are not available for check out but were available through the GBCI Law Library collection and in the Segregation Law Library collection through Lexis Nexis, the law library computer system. Kulieke advised Maus that he could purchase the case law or other legal materials requested by submitting a request along with a money disbursement. GBCI started using the online Lexis Nexis system in the legal library. If any inmate would like to have copies made of cases or legal materials, he must submit a request along with a disbursement request made payable to the institution library for the cost of $0.15 a page. Maus did not submit a request to the Library for the copies of the legal materials.

### 13. Offender Complaint GBCI-2009-6816

Maus submitted Offender Complaint GBCI-2009-6816, which was received by the ICE on March 23, 2009, complaining that the library would not send him requested materials. Mohr

investigated the claims and found that Maus had already been issued a law library pass and therefore he was able to obtain the information he was seeking. Mohr rejected GBCI-2009-6816 as moot pursuant to Wisconsin Administrative Code § DOC 310.03(13). Kulieke did not personally participate in any decision regarding the disposition of GBCI-2009-6816.

## C. Legal Property Claims

When GBCI inmates are placed in segregation, the property they had in their general population cells is stored in the property room. The property officer assigned to the segregation units issues property items consistent with inmates' status. GBCI's policy related to property items in the segregation unit is intended to motivate inmates to improve their behavior in segregated statuses so that they will be permitted to move into the general population of the institution as soon as reasonably possible. Pursuant to GBCI policy (Segregation Handbook), inmates are allowed to possess two brown bags of legal material in their cell. If an inmate has more legal material than the allowed two brown bags, this overflow will be maintained in the Segregation Unit Property Room. If an inmate would like to review this legal material, he may submit a request to the property room to substitute documents in his possession with documents held in property. The property room staff will then schedule a time for the inmate to review these documents and decide which documents he would like to substitute with the property in his possession.

Under DAI Policy # 309.20.03(I)(F)(2), inmates are allowed to possess legal material which will be limited to a box no larger than, 20" x 20" x 20", or 8000 cubic inches, in their cell while in general population status. It is the inmate's responsibility to contact the property room staff and request the items needed.

### 1. October 2008

Maus was placed into the segregation on October 13, 2008. He made a request for his legal property on October 13, 2008, however, Schiller was out of the institution. At that time, there was no relief officer assigned to the property room due to staffing issues. Maus received his legal property on November 2, 2008. Schiller was not in the institution between the dates of October 13, 2008 and November 2, 2008. Maus wrote requests to Schiller on October 13, 15, 17, 19, 21, 23-25, and 28-30, 2008, to get his legal property. On October 19, 24, and 30, 2008, Maus sent Pollard request slips to order Schiller to Maus his legal property. Maus did not receive a response.

### 2. Offender Complaint GBCI-2008-27769

Maus submitted Offender Complaint GBCI-2008-27769, which was received by the ICE on October 24, 2008, complaining that he requested his legal property on October 13, 2008, and had not yet received it. Mohr investigated the claim and found that Maus was moved from the North Cell Hall to the Transitions Unit on October 13, 2008, and then to the Segregation Unit on October 14, 2008. Mohr noted that the property officer who handled Segregation property was not in work status for an extended period of time and no relief officer was assigned in his absence. Mohr found that Maus was correct and on October 31, 2008, recommended that the complaint be affirmed with the modification that Lesatz and Swiekatowski be notified of the complaint. On October 31, 2008, Pollard accepted Mohr's recommendation and affirmed GBCI-2008-27769 with the recommended modifications. Lesatz was notified of the inmate complaint and Maus received his legal materials within the allowable property items list for inmates on November 2, 2008. Maus appealed this decision and on November 10, 2008, Gozinske noted that while Maus had been issued all of his legal work, the decision by the institution reasonably and appropriately addressed the issued raised by

Maus. Gozinske noted that Maus presented no new information that would warrant recommending overturning the decision and recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Smith dismissed GBCI-2008-27769 on November 10, 2008.

### 3. July 25, 2009 Video/DVDs

On July 25, 2009, a box containing two VHS tapes, one DVD, and a three ring binder containing legal papers was dropped off at GBCI for Maus. Pursuant to DOC Division of Adult Institutions (DAI) Policy and Procedure 309.20.01, inmates are not allowed to possess DVDs or VHS tapes. These items were then placed in the property room on hold. On August 3, 2009, Lesatz received an Interview/Information Request from Maus stating that there was a box of legal papers and videos that he claims Stutleen put a hold on. Lesatz advised Maus to write to Stutleen. On August 3, 2009, Stutleen received an Interview/Information Request from Maus stating he was withholding legal papers from him and that he wanted this paperwork. Mohr responded to this request form noting that a female lawyer appeared at the institution door with items from one of his legal cases. She stated that Maus had fired her and then left the items and drove off. Mohr informed Maus that the items were forwarded to Lesatz and Process in property. Maus was informed that he could send the items out to who he wished.

Maus avers that between July 25 and September 10, 2009, he wrote multiple request slips and inmate complaints to Pollard, Mohr, Baenen, Lesatz, Stutleen and Process ro get his legal files on Case Number 05-CF-10 out of the property room . Process avers he did not receive a request for a pass to review these legal documents from Maus until August 30, 2009. Process told Maus that he would be allowed to keep the legal papers up to the allowable limits, but could not keep the VHS tapes or DVD. Maus did not make requests to review the legal papers. He demanded that he be

17

provided the items without exchange of the items he was already in possession of, which was already at the two bag limit. Maus was informed that he would not be allowed to view the videos without a court order, pursuant to GBCI policy and procedures. Maus did not provide a court order.

Maus avers that on August 12, 13, 2009, he went to trial in Case Number 05-CF-10 without his legal files because Pollard, Lesatz, Stutleen, Mohr, and Process conspired to illegally hold his legal files, so he could not prepare himself for trial. He further avers that when he was trying to get his legal files for 05-CF-10 out of the property room, he was not informed that he needed a court order to review the tapes until September 21, 2009.

On September 10, 2009, Maus was issued a pass to the property room and Property Receipt/Disposition form, DOC-237, was filled out listing the items in the box that was dropped off for him that would be disposed of. Maus was asked to give a decision on how to dispose of the property: destroy it, donate it, or send it outside of the institution at his cost. Maus refused to give a decision on how to dispose of the property and refused to sign the Property Disposition form. Maus was told that the property would be disposed of within ten days. Maus never informed the GBCI property room how he wanted to dispose of the items.

Maus avers that on September 12, 2009, he sent Process a request slip telling him to hold the tapes because he filed an inmate complaint about the tapes, but Process sent the request slip back stating that he told plaintiff what he is going to do with the tapes. (Maus Aff. ¶ 145, Ex. H.)

The VHS tapes and DVD were destroyed on December 14, 2009. The documents in the binder were placed in Maus' property in the property room held for his review.

### 4. Offender Complaint GBCI-2009-17126

Maus submitted Offender Complaint GBCI-2009-17126, which was received by the ICE on August 3, 2009, complaining, "Some frivolous attorney I had working for me dropped off some legal papers at the door here. And they where taken to the property room and I was never told about them until (5) days ago. This place believes I have to send this legal papers out. I need these exhibits back for my records so I can show a federal judge how you illegally blocked my court doors." (Mohr Aff. ¶ 64, Ex. 112.) Mohr investigated Maus' claim and found that Maus failed to state who stated that "this place" believes he has to send this legal paper out. Mohr contacted Lesatz and Process who both stated that Maus had not contacted them concerning this issue. Both Lesatz and Process informed him that Maus would be allowed to keep the legal papers up to the allowable limits set in the Administrative Code.

On August 3, 2009, Mohr rejected Offender Complaint GBCI-2009-17126 pursuant to Wis. Admin. Code § DOC 310.11(5)(c) because Maus did not allege sufficient facts upon which redress may be made. Maus appealed the decision and on August 5, 2009, the reviewing authority found that the complaint was appropriately rejected by the ICE .

### 5. Offender Complaint GBCI-2009-19779

Maus submitted Offender Complaint GBCI-2009-19779, which was received by the ICE on September 8, 2009, complaining that "For the last (2) months I have been trying to get some legal documents that the property room is illegally holding. That's okay with me because I'm going to have a federal judge order you people to pay me for every day you have been holding my legal papers." (Mohr Aff. ¶ 68, Ex. 113.) Mohr investigated the claim and was informed by Process and Janus that Maus would need to make a request for a pass to the Property Room. Process and Janus

stated that there were video tapes that were dropped off with the legal papers and Maus would need to notify staff when he visits the Property Room how he would wish to handle the video tapes. Mohr noted he had previously contacted Lesatz and Process concerning this issue and that they informed him that Maus would be allowed to keep the legal papers up to the allowable limits set in the Administrative Code. Mohr noted that video tapes were not on the list of items allowed into GBCI per Wis. Admin. Code § DOC and DAI 309.20.01.

On September 8, 2009, Mohr recommended that GBCI-2009-19779 be dismissed with the modification that Lesatz and Process receive a copy of the complaint. On September 9, 2009, the reviewing authority reviewed the findings of the ICE, accepted Mohr's recommendation, and dismissed GBCI-2009-19779. Maus appealed the decision to the CCE's office and on September 21, 2009, Gozinske found that the institution's decision reasonably and appropriately addressed the issue raised by Maus and that Maus presented no information on appeal that would warrant a recommendation to overturn that decision. Gozinske noted that the new issue raised on appeal (denial of video tapes and a DVD) was not properly before the examiner, would not be addressed and recommended the appeal be dismissed. Based on the findings and recommendation of the CCE, Deputy Secretary Ozanne dismissed GBCI-2009-19779 on October 24, 2009.

### 6. Offender Complaint GBCI-2009-20909

Maus submitted Offender Complaint GBCI-2009-20909, which was received by the ICE on September 21, 2009, complaining that he was not allowed to keep two video tapes and a DVD. Mohr investigated Maus' claim and found the two video tapes and the DVD are not allowed property items and that Maus did not provide a court order for him to view or have the video tapes or DVD. Mohr was informed by Process that he previously informed Maus that he would need to

20

send out the video tapes and DVD.  On September 21, 2009, Mohr rejected the complaint pursuant to Wis. Admin. Code § DOC 310.11(5)(d), the "inmate submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time lines."  Maus appealed the decision and on September 28, 2009, the reviewing authority found that the complaint was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5).

### 7. Offender Complaint GBCI-2010-1576

Maus submitted Offender Complaint GBCI-2010-1576, which was received by the ICE on January 20, 2010, complaining that a property officer told him that he had to send out two DVDs or the property room was going to destroy them.  Mohr investigated the claim and found Maus was not being required to send out the DVDs at that time and that the DVDs were being held in the Property Room.  On January 20, 2010, Mohr recommended that GBCI-2010-1576 be dismissed.  On January 21, 2010, the reviewing authority reviewed the findings of the ICE, accepted Mohr's recommendation, and dismissed GBCI-2010-1576.  Maus appealed the decision and on February 4, 2010, Gozinske noted that Wis. Admin. Code § DOC 310.13(1) requires appeals to be received and accepted at the CCE office within ten calendar days after the reviewing authority's decision.  Noting that the complaint was decided on January 21, 2010 and received in the CCE's office on February 3, 2010, and Maus offered no good cause for the late submission, Gozinske recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Ozanne dismissed GBCI-2010-1576 on April 16, 2010.

### 8. Offender Complaint GBCI-2010-2923

Maus submitted Offender Complaint GBCI-2010-2923, which was received by the ICE on February 5, 2010, complaining that he was not being provided all of his legal paperwork. Mohr investigated the claim and found Maus received the amount of legal work one is allowed in the Segregation Unit. Mohr was informed by Schiller that Maus made a request for legal papers from his Segregation Property. Maus stated in his request that he did not wish for the staples and other items that are not allowed in Segregation Unit removed from the legal papers. Schiller stated that he was unable to make an exchange because he is not permitted to supply Maus with items attached to legal paper that are in violation of Segregation rules or to provide more legal paper work than the Segregation Handbook allows.

On February 5, 2010, Mohr found no violations of the Administrative Code and recommended that GBCI-2010-2923 be dismissed. On February 10, 2010, the reviewing authority reviewed the findings of the ICE, and based on those findings, accepted Mohr's recommendation and dismissed GBCI-2010-2923. Maus appealed the decision and on May 6, 2010, Rose found that the institution's decision reasonably and appropriately addressed the issued raised by Maus. Rose noted that Maus presented no information on appeal that would warrant a recommendation to overturn that decision and recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Ozanne dismissed GBCI-2010-2923 on June 15, 2010.

### 9. Offender Complaint GBCI-2010-4152

Maus submitted Offender Complaint GBCI-2010-4152, which was received by the ICE on February 23, 2010, complaining that on February 19, 2010, he went to a hearing and lost Case No. 09-C-15 or 10-C-15 because Schiller was holding his legal property. Mohr investigated

the claim and found that Maus had made a request for legal papers from his Segregation Property. Maus stated in his request that he did not wish for the staples and other items that are not allowed in Segregation Unit removed from the papers. Schiller stated he was unable to make an exchange because he was not permitted to supply Maus with items attached to legal paper in violation of Segregation rules or to provide more legal paper work than the Segregation Handbook allows.

On February 23, 2010, Mohr rejected GBCI-2010-4152 pursuant to Wis. Admin. Code § DOC 310.11(5)(g), because the issues raised in this complaint had been addressed through the inmates prior use of the ICRS. Maus appealed the decision and on February 25, 2010, the reviewing authority found that the complaint was appropriately rejected by the ICE.

### 10. Offender Complaint GBCI-2010-4630

Maus submitted Offender Complaint GBCI-2010-4630, which was received by the ICE on March 1, 2010, complaining that he was being denied his legal property by Schiller. Mohr investigated the claim and was again informed by Schiller that he would provide Maus with his legal papers if he allows the papers to be submitted to him within the rules of the Segregation Unit.

On March 1, 2010, Mohr rejected GBCI-2010-4152 pursuant to Wis. Admin. Code § DOC 310.11(5)(g), because the issues raised in the complaint had been addressed through the inmate's prior use of the ICRS. Maus appealed the decision and on March 3, 2010, the reviewing authority found that the complaint was appropriately rejected by the ICE.

### 11. December 26, 2009 DVDs

On December 26, 2009, two DVDs relating to one of Maus' lawsuits were received at GBCI for Maus. Lesatz received a request from Maus requesting to view two DVDs. Lesatz responded to this request informing Maus that pursuant to DOC Division of Adult Institutions (DAI)

Policy and Procedure 309.20.01, inmates are not allowed to possess DVDs or VHS tapes and that in order to view the DVD's Maus needed to present a court order granting permission. Pursuant to DAI Policy 309.20.01, Maus was not allowed access to the DVDs because DVDs are not approved property for inmates. Maus refused have the DVD's sent out of the institution. On March 17, 2010, Maus received a Property Receipt form indicating that the DVDs had been received and were "Put in DOC 236D Held in Property Per Capt. Lesatz."

### 12. Maus' January 9, 2010 request for his legal property in Segregation

Between January 9, 2010 and March 1, 2010, Maus wrote to Schiller several times demanding his legal documents. The Segregation Unit Handbook states "[t]he maximum amount of legal materials allowed (relating to ACTIVE CASES only) is limited to 2 large brown paper bags. This includes case law, which can be obtained by submitting a DOC-1576 to the main institution library. All other legal materials will be stored in the property room in the main institution. Legal materials will be made available to you as soon as possible, time and staff permitting. An equal amount of materials must be returned to storage to meet the allowed limit. Staples will be removed from all material." (Schiller Aff. ¶ 14, Ex. 166.) Schiller did not provide Maus with his legal materials that he requested because Maus refused to follow the segregation unit rules for legal property. Maus refused to allow Schiller to remove the staples, and other items, attached to his legal property that are not allowed in the segregation unit. Maus also refused to exchange an equal amount of legal materials in his cell for the materials he requested to avoid exceeding the two large brown bag limit.

On March 1, 2010, Maus wrote Schiller requesting his legal property and finally agreed to allow the staples to be removed. Maus received his legal property shortly afterwards.

24

From January 9, 2010 till March 2010, the only reason Maus was denied his legal property was because he refused to follow the segregation rules regarding legal property.

Maus avers that between February 21 and March 8, 2010, he did not talk to Schiller about his legal files.

### 13. Offender Complaint GBCI-2010-3231

Maus submitted Offender Complaint GBCI-2010-3231, which was received by the ICE on February 10, 2010, complaining that he wrote to Lesatz requesting to review two DVDs being held in the property room but Lesatz refused to answer the request. Mohr investigated the claim and found Lesatz responded to Maus, denying his request. Mohr noted that the issue of the complaint was reduced to one person's word against the others. Lacking any other credible evidence, Mohr was placed in the position of having to speculate and found that would not be proper. On February 10, 2010, Mohr recommended that GBCI-2010-3231 be dismissed. The reviewing authority reviewed the findings of the ICE, accepted Mohr's recommendation, and dismissed GBCI-2010-3231. Maus appealed the decision and on May 6, 2010, Rose found that the institution's decision reasonably and appropriately addressed the issued raised by Maus. Rose noted that Maus presented no information on appeal that would warrant a recommendation to overturn that decision and recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Ozanne dismissed GBCI-2010-3231 on June 15, 2010.

### D. Inmate Accounts/Legal Mail

### 1. Offender Complaint GBCI-2008-29715

Maus submitted Offender Complaint GBCI-2008-29715, which was received by the ICE on November 18, 2008, complaining that he placed a letter in the mail on October 30, 2008,

and it was returned to him on November 3, 2008, stating he had insufficient funds. The ICE office requested that Maus send the envelope and notice of insufficient funds to the ICE office within five days. Maus informed ICE Cathy Francois that he did not have the envelope for the ICE to view. Mohr investigated the claim and found that Maus was not on a legal loan on the dates of the mailing listed in his complaint. Mohr further found that $40.00 was removed from Maus' trust account to cover the filing fees for case no. 2008-AP-2436 on October 30, 2008, which depleted his account and therefore did not have funds available to complete the transactions listed in his complaint. Mohr noted that Maus had since applied for and was granted a legal loan. It is encumbant upon the inmate to have the funds available to cover the costs for postage and items he wishes to purchase at the time of the request. Mohr noted that the State of Wisconsin and GBCI offer a legal loan program for inmates who are indigent and Maus had not exercised his option to have a legal loan in place at the time of the mailing and on November 21, 2008, recommended that his complaint be dismissed. On November 21, 2008, Pollard accepted Mohr's recommendation and dismissed GBCI-2008-29715.

Maus appealed the decision and on on December 18, 2008, CCE Rose found that the institution's decision reasonably and appropriately addressed the issue raised by Maus. Rose noted that Maus presented no information on appeal that would warrant a recommendation to overturn that decision and recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Smith dismissed GBCI-2008-29715 on January 8, 2009.

### 2. February 23, 2009 Mailing

Institution staff pick up outgoing inmate mail seven days a week. After outgoing mail is collected and sorted as to in-house mail, out-of institution mail, and legal mail, it is forwarded onto the mailroom for inspection and mailing. Maus sent a 9 x 12 brown envelope weighing 1 pound 9

ounces with a disbursement request to the mailroom on February 23, 2010 for postage and mailing. GBCI uses an electronics mailing system that calculates the postage for mail pieces that leave the institution. The system is approved by the United States Postal Service (USPS) and the rate packs of this system are set by the USPS through a public vendor. Envelopes that are sent to the institution mailroom needing postage are sent through this postage machine. This machine weighs the envelope and places the appropriate postage on it. Postage rates are set by the USPS. Letters or envelopes, no matter their size, if they weigh more than 13 ounces, like the mail piece in question here, are not considered First Class mail and are priced on different pricing schedule. The cost of postage for Maus' mailing was $7.50. Huck processed this piece of mail consistent with established policies and procedures.

### 3. Offender Complaint GBCI-2010-5203

Maus submitted Offender Complaint GBCI-2010-5203, which was received by the ICE on March 8, 2010, complaining that the mailroom took $7.50 out of his account for postage on a 9 x 12 inch brown envelope that he did not believe could cost that much. Maus stated that he mailed out an envelope the week before with more paperwork that cost him only $2.75. Mohr investigated the claim and found GBCI uses an electronics mailing system that calculates the postage for mail pieces that leave the institution. Mohr was advised by the Customer Service Division of the USPS that letters or envelopes, no matter their size, if they weigh more than 13 ounces, like the mail piece in question here, are not considered First Class mail and are priced on different pricing schedule. On March 10, 2010, Mohr recommended that GBCI-2010-5203 be dismissed. On March 15, 2010, the reviewing authority accepted Mohr's recommendation and dismissed GBCI-2010-5203. Maus appealed the decision to the CCE's office and on June 29, 2010, Rose

found that the institution's decision reasonably and appropriately addressed the issues raised by Maus. Rose noted that Maus presented no information on appeal that would warrant a recommendation to overturn that decision and recommended that the appeal be dismissed. Based on the recommendation of the CCE, Ozanne dismissed GBCI-2010-5203 on July 24, 2010.

**E. Cell Searches**

### 1. January 20, 2010 cell search

Maus claims that on January 20, 2010, two officers came to his cell for a cell search and moved his papers. Maus believes that the officers informed Pollard and Ericksen he was planning to file a lawsuit. Pollard had no knowledge of a cell search of Maus' cell on January 20, 2010 and he did not order DOC staff to perform a cell search of Maus' cell on or around that date. Pollard was not informed by officers after a cell search that Maus was planning to file a lawsuit.

### 2. March 19, 2010 cell search

Maus claims that on March 19, 2010, Cooper had Segregation Unit staff search Maus' cell and take all of his legal papers except two paper bags, to deny him access to the courts. The search of Maus' cell on March 19, 2010, was performed in accordance with Wis. Admin. Code § DOC 306.16. At no time on or around March 19, 2010, did Cooper order DOC staff to perform a cell search of Maus's cell to steal his legal files or order DOC staff to perform a cell search of Maus's cell to deny him access to the court.

**F. Inmate Movement/TLU Placement**

Maus claims that Pollard and Ericksen retaliated against him by having him moved out of Health Services Unit (HSU) to the Segregation Unit. On January 9, 2010, Maus was placed in Temporary Lock-Up (TLU) status in the STEP unit of GBCI pending investigation into allegations

that Maus was strong-arming inmates out of their canteen items. Segregation rules apply to the STEP Unit and the Segregation Property Officer is responsible for managing the property of inmates in the STEP Unit. Inmates are placed in TLU because if allowed to stay on the unit of the alleged violations, the inmate may impede the pending investigation or disciplinary action and it may be disruptive to the operation of the unit and institution.

Lindmier placed Maus in TLU on January 9, 2010 solely because of actions in strong-arming fellow inmates for their canteen items. He was not placed in TLU for threatening to sue GBCI staff. On February 2, 2010, Maus was moved from the STEP unit to the Segregation Unit but maintained his status on TLU. At no time did Pollard or Ericksen direct Swiekatowski to move Maus from the STEP Unit to the Segregation Unit.

An inmate's housing location is an administrative decision based on the needs of the unit, the status of an inmate or the security of the staff, inmate, other inmates and the institution. The institution and its staff must have the capability to manage its cells and inmates in the best interest of the institution, staff, and inmate population as a whole. Maus' cell met all requirements mandated by the Wis. Admin. Code § DOC 303. Further, Maus was allowed all property and privileges afforded to inmates on TLU status, while housed on the STEP unit and in the Segregation Unit. Based on the review of Maus' internal movement records, he was never housed in the HSU. Maus' move from the STEP unit to the Segregation Unit was not motivated, in whole or in part, by an intention of denying Maus access to the courts or to retaliate against Maus for filing a lawsuit or in retaliation for any other action.

### 1. Offender Complaint GBCI-2010-3534

Maus submitted Offender Complaint GBCI-2010-3545, which was received by the ICE on February 16, 2010, complaining that he was illegally removed off the STEP unit to the Segregation unit on February 2, 2010, in retaliation for filing a lawsuit against GBCI staff. Mohr investigated the claim and found that Maus was on TLU status at the time of his move. Mohr found that no violations had occurred and recommended that GBCI-2010-3545 be dismissed. On February 18, 2010, the reviewing authority reviewed the findings of the ICE and dismissed GBCI-2010-3545. Maus appealed the decision and on March 1, 2010, Gozinske found that the institution's decision reasonably and appropriately addressed the issue. Based on the findings and recommendation of the CCE, Ozanne dismissed GBCI-2010-3545 on April 30, 2010.

### G. Inmate Accounts

According to Division of Adult Institutions (DAI) Policy 309.04.01, GBCI Procedure (II) Outgoing Mail (E), inmates are required to affix the a one ounce stamp to all outgoing mail, with the exception of legal mail for inmates on an approved legal loan and indigent inmates who are allowed one free letter per week. Inmates on legal loan are allowed to send legal mail only by attaching a completed money disbursement form marked "legal mail." Indigent inmates must write "free" in the upper right-hand corner of the envelope and staff must verify the inmate's indigence.

Between October and November 10, 2008, Maus was not on legal loan. On November 10, 2008, Maus was approved for a legal loan until December 31, 2008 for Case Number 07-CF-116. During October and November of 2008, Maus sent the business office several letters that did not comport to DAI Policy 309.04.01, GBCI Procedure (II) Outgoing Mail (E). Maus sent the business office letters without the first one ounce stamp affixed, while he was not on legal loan,

and without indicating that the letter constituted his one free letter a week as an indigent inmate. Instead, Maus included a money disbursement request to cover the cost of mailing. DAI Policy 309.04.01 (IV) Distribution of Mail (G) Non-Delivery of Inmate Mail states when outgoing mail is not delivered, the mail must be destroyed or returned to the inmate. Pursuant to that policy, Highly returned to Maus all letters he sent to the business office that violated DAI Policy 309.04.01, GBCI Procedure (II) Outgoing Mail (E).

On October 30, 2008, Highly received a proper disbursement request from Maus to pay the remaining filing fee Maus owed on Wisconsin Court of Appeals Case Number 08-AP-2436. On that date, Maus had $9.25 in his regular inmate trust account. Pursuant to the business office's procedure on paying filing fees for Wisconsin Court of Appeals cases, Highly paid the $40 filing fee by zeroing out Maus' regular account first, and then taking the additional $30.75 needed to pay the filing fee from his release account. Highly did not close Maus' regular account at any time in October or November of 2008. Inmate accounts are only closed if the inmate is released or transferred to another institution. His regular account was depleted on October 30, 2008 by the payment of the $40 filing fee for 08-AP-2436, but it was not closed.

Maus claims that Nicole Kamphuis made a photocopy of legal papers of Maus and sent them to Pollard and Ericksen. Kamphuis did not, nor has she ever, made copies of lawsuits or legal materials for Pollard, Ericksen, or any other staff members at GBCI. Pollard and Ericksen have not received any copies of Maus' legal papers from Ms. Kamphuis or any other employee of the business office. Pollard and Ericksen were not aware of Maus sending any legal papers to the business office on February 1, 2010. Pollard has no involvement with inmate accounts and disbursement requests. Pollard and Ericksen have never read any legal papers belonging to Maus,

nor did they retaliate against Maus by having Swiekatowski move Maus from the HSU to the Segregation Unit.

### 1. Offender Complaint GBCI-2008-28984

Maus submitted Offender Complaint GBCI-2008-28984, which was received by the ICE on November 10, 2008, complaining that Michelle Peters required an embossed/stamped envelope before his request for a money disbursement could be sent to his intended recipient. Mohr investigated Maus' claim. Nicole Kamphuis of the business office informed Mohr that Maus was not on a legal loan at the time and was showing available funds at the time of his request. Mohr found that Peters was following GBCI procedure and recommended that GBCI-2008-28984 be dismissed. On November 10, 2008, the reviewing authority accepted Mohr's recommendation and dismissed GBCI-2008-28984. Maus appealed the decision and on November 21, 2008, Gozinske noted that Wis. Admin. Code § DOC 310.13(1) requires appeals to be received and accepted at the CCE office within ten calendar days after the reviewing authority's decision. Noting that the complaint was decided on November 10, 2008 and received on November 21, 2008, and Maus offered no good cause for the late submission, Gozinske recommended that the appeal be dismissed. Based on the findings and recommendation of the CCE, Smith dismissed GBCI-2008-28984 on November 21, 2008.

### 2. $1.50 court filing fee deduction

As the Financial Specialist 4-Lead Worker at GBCI, Kamphuis was not responsible for setting up filing fee deductions, deducting filing fees, or cutting checks for filling fees. The Inmate Accounts Financial Specialist 2 at GBCI is responsible for setting up filing fee deductions, deducting filing fees, and cutting checks for filing fees. Deductions for filing fees are only set up

when the business office receives notice to do so from the court. Kamphuis did not personally participate in processing any of Maus' requests for filing fees or deducting money from Maus' account to pay filing fees as ordered by courts. Kamphuis has reviewed Maus' Wisconsin Inmate Trust System (WITS) account. Maus' Offender Debts and Obligations in the WITS system shows that a filing fee deduction of $110.47 was set up for Eastern District of Wisconsin case number 09-CV-42 on January 15, 2010. On January 28, 2010, $1.50 was deducted from Maus' account and paid to the Court for the filing fee in 09-CV-42. On February 9, 2010, the Office of the Clerk for the Eastern District of Wisconsin sent the GBCI business office notice that Maus fully paid the $350.00 filing fee for 09-CV-42. On February 10, 2010 the filing fee deduction on Maus' WITS account for case 09-CV-42 was placed on inactive status. The business office at GBCI could not refund the $1.50 deducted from Maus' account because that money had already been paid to the Court.

### 3. Offender Complaint GBCI-2010-5846

Maus submitted Offender Complaint GBCI-2010-5846, which was received by the ICE on March 16, 2010, complaining that the business office stole $150.00 to pay for a filing fee for Case No. 09-CV-42 on March 14, 2010. Mohr investigated the claim and found there was no withdrawal of $150.00 from his WITS Trust Account on or near that date and Business Office staff did not have knowledge of any such withdrawal. Mohr recommended that GBCI-2010-5846 be dismissed. On March 16, 2010, the reviewing authority accepted Mohr's recommendation and dismissed GBCI-2010-5846.

Maus appealed the decision to the CCE's office, where it was received on March 29, 2010, clarifying that it was a $1.50 deduction, not a $150.00 deduction. On May 18, 2010, Rose

found that on January 28, 2010, a $1.50 deduction had been taken from the Maus' account for payment on the filing fee ordered in Case Number 09-CV-42. Rose noted that the complaint filing against that deduction would have been due prior to March 16, 2010, the date Maus' complaint had been accepted. On May 18, 2010, Gozinske recommended that the appeal be dismissed as untimely. Based on the recommendation of the CCE, Ozanne dismissed GBCI-2010-5846 on July 24, 2010.

## H. Conduct Report 2075277

On January 6, 2010, based on information from staff that Maus was strong-arming inmates Bowers and Allen , Lindmier marked all of the items from Bowers and Allen's canteen with an invisible marker in order to track the items. On January 9, 2010, Lindmier went to Dorm B and scanned the canteen looking for the items she marked and discovered the items that were previously in the possession of Bowers and Allen (six honey buns) were in inmate Polus' foot locker. On January 9, 2010, Lindmier placed Maus on TLU status pursuant to Wis. Admin. Code § DOC 303.11(4)(a), pending an investigation into whether he was strong-arming two fellow inmates for their canteen items. On that same date, Maus was given a Notice of Offender Placed in Temporary Lockup form explaining the reason why he was being placed in TLU.

Maus avers that he never took any canteen items from Bowers, Allen, or any other inmate. (Maus Aff. ¶ 122.)

Lindmier stated that during the course of her investigation three confidential informants (CI) statements were secured. CI 1 stated Maus would give inmates one canteen item and expect two canteen items in return. Maus would pick on Allen and would state Allen was being "punked out" by taking advantage of him and would call Allen "his bitch" and said "as long as I keep Allen as my bitch then I am never gonna let him go." CI 2 said Maus was running a canteen store

34

and taking advantage of Bowers and Allan by taking their canteen items. On December 29, 2009, CI 2 witnessed Bowers give Maus his entire bag of canteen. Maus would have inmates hold his canteen so he would not be over his property limits. Maus told Bowers that if he was going to move to the cell halls that he had to give Maus his entire canteen or Maus would physically take it from Bowers. On January 8, 2010, CI 2 observed Bowers give Maus his honey buns. Maus also took advantage of Allen by taking his canteen. CI 3 said Maus would give Allen one canteen item in exchange for two canteen items. Maus would give Allen a list of canteen items to order that he would have to give to Maus. CI 3 said Maus made deals with a lot of inmates in the dorm. Maus would have Allen and Polus hold his canteen so he was not over his limits. Maus was also threatening Bowers to pay up his canteen.

Due to the fact that Polus was in possession of the six honey buns marked with an invisible marker, that CI 2 observed Bowers giving Maus six honey buns, and that CI 3 stated that Polus would hold Maus' canteen so that he was not over his limits, Lindmier believed it more likely than not that the canteen was not obtained with the consent of Bowers. CI 1, 2, and 3 concurred that Maus threatened to Allen and Bowers for their canteen. Based on her investigation, Lindmier found that Maus engaged in strong-arming two fellow inmates, forcing them to give him their canteen items.

On January 24, 2010, Lindmier issued Maus Conduct Report 2075277 for violation of Wis. Admin. Code §§ DOC 303.16, threats, and 303.34, theft for strong-arming inmates from Dorm B for their canteen items. Lindmier wrote the conduct report due to her belief that Maus engaged in strongarming two fellow inmates, forcing them to give him their canteen items. Captain Delvaux reviewed the conduct report and made the decision to proceed as a major offense pursuant

to Wis. Admin. Code § DOC 303.76, noting that the alleged violation created a risk of serious disruption at the institution.

On January 27, 2010, a copy of Conduct Report 2075277 was given to Maus. Maus was also given a Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time form, informing him that he would have the opportunity to be heard before an impartial decision maker, the opportunity to call witnesses and present documentary evidence, and an appointed staff advocate. Staff certified that Maus had read, or staff read to him, the Notice of Major Disciplinary Hearing Rights and that Maus refused to sign the notice.

On February 9, 2010, Walton, the staff advocate, met with Maus to ensure that he had received a copy of the conduct report and witness list form and to inform him of the procedural process of the disciplinary hearing. Maus told Walton that he wished to add two more witnesses for the disciplinary hearing. Walton offered Maus another Offender's Request for Attendance of Witness form and advised him of the two-day time limit in which to return the completed witness form to the Security Office, per Wis. Admin. Code § DOC 303.81. Walton advised Maus that he could not promise that the request would be approved.

According to Maus, on February 8, 2010, Walton gave him a new witness form to fill out, and told him to call inmates Bowers and Allen as witnesses and drop Officers Case and Reed as witnesses. Maus further avers that Walton told him that Conduct Report 2075277 looked like it was retaliatory and that he did not know how any officer could find Maus guilty based off of three informants' statements without getting statements from inmates Bowers and Allen. Walton, on the other hand, avers that he did not tell Maus that Conduct Report 2075277 was retaliatory, did not tell

36

him there was no way any officer would find Maus guilty based on three informants statements, and did not advise Maus to call Allen and Bowers as witnesses at the disciplinary hearing.

Maus submitted his request for attendance of witnesses on January 27, 2010, asking that Sergeants Case, Reid, and Miller testify as witnesses. On February 1, 2010, Captain Delvaux reviewed Maus' request and decided that Reid was unavailable as he was assigned to a different shift but that he would give a statement. Delvaux decided Miller would not attend pursuant to Wis. Admin. Code § DOC 303.81(1), which states:

> The accused may directly or through an advocate make a request to the security office for witnesses to appear at the major violation hearing, including requests for the appearance of the staff member who signed the conduct report. *Except for good cause, an inmate may present no more than 2 witnesses in addition to the reporting staff member or members.* The inmate shall make this request within 2 days of the service of notice when no advocate is assigned and within 2 days of the initial contact by the advocate when an advocate is assigned. The security director may waive the time limits for good cause.

Emphasis added. Delvaux made this decision regarding Miller because he was not the reporting staff member, Maus did not provide cause for presenting more than two witnesses, and Miller was the third requested witness listed on the request form. The DOC 73 dated January 27, 2010 is the only Offender's Request for Attendance of Witness form Delvaux received from Maus. If Maus had submitted a second DOC 73 form to the security office, it would have been forwarded to Delvaux for review.

The disciplinary hearing on Conduct Report 2075277 was held on February 12, 2010, and Officer Janus was appointed as Maus' staff advocate. Campbell was not assigned as the hearing officer, was not the officer who escorted Maus to the disciplinary hearing, and was not present at the

disciplinary hearing on Conduct Report 2075277. Maus was present at the hearing and the hearing officer, Captain Schultz, read the conduct report aloud to him. Maus was also read the confidential informant summaries.

According to the defendants, at this time Mark Zimonick attended the hearing as Maus' advocate. Schultz asked Maus if he had any objections to Zimonick as his staff advocate, and Maus indicated that he did not. According to Maus, Schultz did not ask him if he objected to Zimonick being his advocate.

Maus stated that that he only had his canteen items. He further stated "I kick it with this group of inmates every day. I weigh 120 pounds soaking wet. How can I strong arm anyone? I sat with these people every day at chow. There is not enough time to eat one tray let alone two. I borrowed canteen to these guys, I was giving it back."

Schultz evaluated the conduct report, the testimony of Maus, the CI statements, witness statements, advocate statements, and specific related charges. He found Lindmier credible as she had nothing to gain by writing this report. Schultz found that Reid's report that staff reported that Maus received canteen items form Bowers and Allan, coupled with the consistency of the CI statements, made it more likely than not that Maus was making threats of harassing or physically harming these inmates if they did not submit their canteen items. Maus admitted that he was getting canteen from these inmates but stated that he was borrowing the items and they were paying him back. Schultz found that Maus was having inmates hold his canteen that he would steal from inmates by making threats to the inmates in order to get the canteen items.

On February 12, 2010, Maus was found guilty of the violations of Conduct Report 2075277 and given a disposition of 360 days disciplinary separation and 5 days extension of

mandatory release. Schultz ordered that the contraband be disposed of and noted that the reason for the disposition was the serious risk of harm to inmates involved and Maus's poor attitude at the hearing. Schultz had no further involvement regarding Conduct Report 2075277.

Maus appealed the decision of the hearing on February 12, 2010, claiming that he was denied his right to have Bowers and Allan at the hearing as witnesses, that he filled out a new witness form but was denied them as witnesses, and that Lindmier wrote this conduct report out of retaliation since "she didn't know how to do her job and couldn't get lying statements out of Allen and Bowers. Lindmier went and found (3) got snitchs and had them write lying statements about my that conderdicated each other [sic]." On February 22, 2010, Baenen reviewed the record of the conduct report and based on his findings, modified the hearing officer's sentence to retain the 360 days disciplinary separation but removed the 5 day extension of mandatory release.

Maus claimed that he filled out a witness form to have inmates Allan and Bowers as witnesses for his disciplinary hearing on Conduct Report 2075277 and sent it to Ericksen. Ericksen did not receive a request for attendance of witnesses form from Maus requesting inmates Allan and Bowers as witnesses for his disciplinary hearing on Conduct Report 2075277. Ericksen has no knowledge of Maus submitting a request for attendance of witnesses form requesting that inmates Allan and Bowers as witnesses for his disciplinary hearing.

Maus claims that he wrote a letter to Cooper alleging Schultz threatened to have officers assault him and place him in a cell with no clothes or property. Cooper has no knowledge of any letter from Maus dated on or around February 12, 2010, alleging that Schultz threatened to have officers assault him and/or place him in a cell with no clothes or property.

### 1. Offender Complaint GBCI-2010-4632

Maus submitted Offender Complaint GBCI-2010-4632, which was received by the ICE on March 1, 2010, complaining that he was not provided an advocate and was refused two witnesses on Conduct Report 2075277. Mohr investigated Maus' claim and found that Mark Zimonick was listed as the advocate. Mohr interviewed Zimonick who stated that an officer was originally scheduled to be Maus' advocate but Zimonick replaced that advocate. Zimonick stated that Schultz, the hearing officer, directly asked Maus at the beginning of the hearing if he objected to Zimonick being the advocate and Maus did not.

Officer Janus was originally scheduled to be Maus' advocate but when he was transferred to the Segregation Unit, Officer Walton became Maus' advocate. Walton was interviewed by Mohr and stated that he did meet with Maus and he had already completed a DOC 73 form. Walton stated that Maus wished to have two additional witnesses for the disciplinary hearing and Walton advised Maus to make the request via a DOC 73 but did not make any promises that the request would be approved. Mohr further found that Maus completed a DOC 73 form. Offender's Request for Attendance of Witness, requesting Sgt. Case, Sgt. Reid and Sgt. Miller. Capt. Delvaux completed the form on February 1, 2010. Maus stated that he was informed by his advocate on February 9, 2010, to drop Case and Reid as witnesses and to call inmates Bower and Allen, which he claims he did. Capt. Delvaux states he did not receive a second request for witnesses for Conduct Report 2075277 from Maus. Mohr noted that in accordance with Wis. Admin. Code § DOC 310.11(3), the investigation of a complaint filed under § DOC 310.08(3) is limited to review of the record of the conduct report. Mohr reviewed the record concerning this matter and found no harmful procedural error (as defined in § DOC 303.87) and that the record showed the hearing

officer/committee clearly outlined the reason for the decision, appropriate notice was provided to Maus and the disposition did not exceed the maximums listed in the table under § DOC 303.84.

According to Maus, he believes that on March 1, 2010, Mohr conspired with Schultz, Lindmier, Baenen, Pollard, Campbell, Delvaux, Walton, and Zimonick to come up with the lying excuses to cover up the 360 days Maus illegally got. Maus avers that Mohr claimed that Zimonick told him that Schultz asked Maus if it was okay that Zimonick be Maus' advocate and that Maus gave a positive response, which is not true. He also avers that Mohr claimed that Delvaux never received Maus' witness form to have inmate Bowers and Allen as witnesses at the hearing, is also not true.

On March 2, 2010, Mohr recommended that GBCI-2010-4632 be dismissed. On March 8, 2010, Pollard reviewed the findings of the ICE, accepted Mohr's recommendation, and dismissed GBCI-2010-4632. Maus appealed the decision to the CCE's office and on June 21, 2010, Gozinske found that the institution's decision reasonably and appropriately addressed the issue raised by Maus. Gozinske noted that Maus presented no information on appeal that would warrant a recommendation to overturn that decision and recommended that the appeal be dismissed. Based on the recommendation of the CCE, Ozanne dismissed GBCI-2010-4632 on July 24, 2010.

### 2. Offender Complaint GBCI-2010-3883

Maus submitted Offender Complaint GBCI-2010-3883, which was received by the ICE on February 18, 2010, complaining that Schultz illegally gave him segregation time on the disposition of Conduct Report 2075277 in retaliation for being named in Maus' lawsuit. Mohr investigated the claim and interviewed Maus. Mohr reviewed the provisions of Wis. Admin. Code § DOC 303.271 with Maus. He informed Maus that, because the investigative process is regulated

by state law and collective bargaining agreements, no further information would be given to him. Maus chose to pursue the complaint and provided a detailed written description of the events he claimed happened. Based on that statement and the sensitive nature of this incident, on March 8, 2010, Mohr recommended that the complaint be dismissed with the modification that it be further processed pursuant to the applicable personnel rules and collective bargaining agreements pursuant to DAI Policy 310.00.01. Since this complaint was forwarded for investigation, no further action would be taken by the ICE. On March 8, 2010, the reviewing authority reviewed the findings of the ICE, accepted Mohr's recommendation and, dismissed Offender Complaint GBCI-2010-3883 with the recommended modifications.

In his capacity as ICE, Mohr has diligently search the record of appeals of inmate complaints, and his search has disclosed that Maus has filed no appeals to the CCE that address the allegations in his complaint. In his capacity as CCE, Gozinske has diligently searched the record of appeals of inmate complaints, and his search has disclosed that Maus has filed no appeals to the CCE that address the allegations in his complaint.

## I. Conduct Report 2050012

According to the defendants, while Schultz was conducting the disciplinary hearing for Conduct Report 2075277, Maus threatened Schultz. When Maus did not like his disposition, he stated "you mother fuckers. I will just add you to my lawsuit." "I am going to kick your motherfucking ass." Schultz order Maus to stop several times but he refused. Maus continued to call Schultz denigrating names and was attempting to intimidate Schultz by making threats to physically harm him and file a lawsuit against him if Schultz did not find Maus innocent on the

conduct report. Maus was screaming so loud that several staff had to report to the hearing room to escort him back to his cell.

According to Maus, at no time on February 12, 2010, during the time of the hearing did an officer came to his cell because of his yelling, screaming or being disruptive. He avers that did not yell, scream, or otherwise disrupt the hearing.

On February 12, 2010, due to his behavior at the disciplinary hearing on Conduct Report 2075277, Schultz issued Maus Conduct Report 2050012 for violation of Wis. Admin. Code §§ DOC 303.16, threats, 303.24, disobeying orders, 303.25, disrespect, and 303.28 disruptive conduct. Schultz wrote the conduct report due to his belief that Maus made statements threatening him with physical harm and a lawsuit for performing his duties and that he did so with the intent to harass and intimidate Schultz.

Captain Delvaux reviewed the conduct report and made the decision to proceed as a major offense pursuant to Wis. Admin. Code § DOC 303.76, noting that the alleged violation created a risk of serious disruption at the institution or in the community and created a risk of serious injury to another person. On February 19, 2010, a copy of Conduct Report 2050012 was given to Maus. He was also given a Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time form, informing him that he would have the opportunity to be heard before an impartial decision maker and the opportunity to call witnesses and present documentary evidence, as well as informing he would have an appointed staff advocate. Staff certified that Maus read, or staff read to him, the Notice of Major Disciplinary Hearing Rights and that Maus signed the notice. On March 2, 2010, Staff Advocate Nielsen noted that he had contacted Maus and offered

43

him an Offender's Request for Attendance of Witness form. Maus did not request the presence of witnesses at his due process hearing.

The disciplinary hearing on Conduct Report 2050012 was held on March 4, 2010. Maus was present at the hearing and the Hearing Officer, Lt. Campbell, read the conduct report aloud to him. Maus stated that Schultz's statement was not true and that Capt. Schultz was "talking smack to me and he threatened me. There weren't two or three officers like he said. As I was leaving the room Schultz was still yelling at me. I filed an ICE on him the day of the incident."

Lieutenant Campbell evaluated the conduct report, the testimony of Maus, and the verbal orders. He found that Maus was offered an opportunity to call witnesses but chose not to. Campbell stated that there was no conflict of interest with the advocate for this report and the advocate had nothing to add. He found that it was more likely than not that Maus did become upset with his disposition, threatened the hearing officer, became verbally abusive and disrespectful and caused a disruption on the unit. Campbell found Schultz more credible as he had less to gain from the outcome of the report than Maus.

On March 4, 2010, Maus was found guilty of the violations of Conduct Report 2050012 and given a disposition of 61 days loss of canteen. Campbell applied and followed established GBCI policies and procedures at all times while acting as the hearing officer on the disciplinary hearing for Conduct Report 2050012. Maus appealed the decision of the hearing on March 5, 2010, claiming that he was illegally found guilty of the conduct report to try to cover up Schultz's threats of an assault against Maus and to try to stop any criminal or civil action against Schultz. On March 22, 2010, Pollard affirmed the hearing officer's decision and the sentence stating that the penalty and finding of guilt were appropriate.

### 1. Offender Complaint GBCI-2010-6447

Maus submitted Offender Complaint GBCI-2010-6447, which was received by the ICE on March 24, 2010, complaining that Pollard illegally affirmed Conduct Report 2050012 to cover up Schultz's threats and retaliation. Mohr investigated the claim and found that Maus did not challenge any procedures in the conduct report under Wis. Admin. Code § DOC 310.08. The Warden's decision on a conduct report appeal is final regarding the sufficiency of the evidence pursuant to § DOC 303.76(7)(d) and as such, GBCI-2010-6447 was not within the scope of the ICRS. Mohr rejected GBCI-2010-6447 on March 26, 2010. Maus appealed the decision and on March 31, 2010, the reviewing authority found the complaint was appropriately rejected by the ICE.

### J. Conduct Report 2075011

On February 11, 2010, while assigned to Program Segregation, Novitski was delivering canteen on the unit. Novitski approached Maus' cell and proceeded to verify Maus' status to make sure canteen items ordered were allowable for distribution. In doing so, Novitski became aware that Maus had ordered food items but that he was on TLU. Novitski informed Maus that canteen orders could not be delivered to TLU status inmates per the Segregation Unit Handbook. Novitski placed the contraband in the third shift contraband lock up.

On February 12, 2010, Novitski issued Maus Conduct Report 2075011 for violation of Wisconsin Administrative Code §§ DOC 303.24, disobeying orders and 303.63, violation of institutional policies and procedures by ordering canteen while on TLU status. Novitski had no further involvement regarding Conduct Report 2075011.

Pete Ericksen reviewed the conduct report and made the decision to proceed as a minor offense pursuant to Wis. Admin. Code § DOC 303.75. On February 16, 2010, a copy of

Conduct Report 2075011 was given to Maus.  The disciplinary hearing was held on March 4, 2010.  The hearing officer, Schultz, was informed that Officer Longsine had asked Maus five minutes prior to the hearing if he wanted to attend and Maus declined.  Due to Maus's refusal to attend, the hearing proceeded without him.  Schultz evaluated the conduct report, evidence, and the specific related charges in the Wis. Admin. Code § DOC 303.  He found that Novitski was credible as he had nothing to gain by writing the conduct report and that pursuant to the Segregation Handbook, inmates cannot order canteen on TLU status, which Maus did.  On March 4, 2010, Maus was found guilty of the violations of Conduct Report 2075011 and given a disposition of 30 days loss of canteen, and disposal of the canteen items.  Schultz made his decision based on the evidence presented at the disciplinary hearing.  He was not motivated in writing the disposition, in whole or in part, by an intention of retaliating against Maus for reporting misconduct or in retaliation for any other action.

### K. Conduct Report 1867465

On March 1, 2010, Derocha wrote a letter to the Langlade County Court concerning Maus' sentence structure.  Derocha noted that under Wis. Admin. Code § DOC 302.22, "if a registrar is uncertain as to the terms of a sentence imposed on a resident, the registrar shall notify the court."

On March 4, 2010, Derocha received the segregation mail for the records office.  In it was a note from Maus stating that "I need you to get your facts straight before you go writing any letter to any judge."  "I want to see your license stating you got a right to practice law, and where it states you are my attorney."  "You keep your nose out of my business before you wind up in outside court facing criminal charges."  Maus further stated in his letter that Derocha was "nothing more than a paper pusher."

On March 4, 2010, Derocha issued Maus Conduct Report 1867465 for violation of Wis. Admin. Code §§ DOC 303.16, threats and 303.25, disrespect. Derocha wrote a conduct report due to her believe that Maus made written statements threatening her with criminal charges for performing her duties and that he did so with the intent to harass and mentally harm Derocha.

Pete Ericksen reviewed the conduct report and made the decision to proceed as a major offense pursuant to Wis. Admin. Code § DOC 303.76, noting that Maus had previously been found guilty of the same or a similar offense, had recently been warned about the same or similar conduct, and the alleged violation created a risk of serious disruption at the institution. On March 5, 2010, a copy of Conduct Report 1867465 was given to Maus. He was also given a Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time form, informing him that he would have the opportunity to be heard before an impartial decision maker and the opportunity to call witnesses and present documentary evidence, as well as informing he would have an appointed staff advocate. Staff certified that Maus had read, or staff read to him, the Notice of Major Disciplinary Hearing Rights and that he signed the notice. On March 11, 2010, the staff advocate, Waldron, noted that he had contacted Maus and offered him an Offender's Request for Attendance of Witness form. Maus did not request the presence of witnesses at his due process hearing.

The disciplinary hearing on Conduct Report 1867465 was held on March 15, 2010. The hearing officer, Schultz, was informed that Officer Longsine had asked Maus five minutes prior to the hearing if he wanted to attend and Maus had declined. Due to Maus' refusal to attend, the hearing proceeded without him. Schultz evaluated the conduct report, Maus' letter, the inmate statement, advocate statement and the specific related charges in the Wis. Admin. Code § DOC 303.

Schultz reviewed the note of Maus and found that it was Maus' handwriting as he compared it to handwriting from his social service file. Maus wrote that he "instructed" the staff to keep her nose out of his business or she would end up in outside court. Schultz found the report writer credible as they had nothing to gain by writing this report and believed that Maus was harassing staff in attempt to stop her from her duties. Maus was further found to be disrespectful of Derocha's profession when he called her a "paper pusher."

On March 15, 2010, Maus was found guilty of the violations of Conduct Report 1867465 and gave him a disposition of ten days extension of mandatory release and ordered that the note be disposed of. Maus appealed the decision of the hearing on March 19, 2010, claiming that the conduct report was written due to retaliation and that he was adding it to his lawsuit. On March 29, 2010, Pollard affirmed the hearing officer's decision and the sentence stating that the penalty and finding of guilt were appropriate.

### 1. Offender Complaint GBCI-2010-6993

Maus submitted Offender Complaint GBCI-2010-6993, which was received by the ICE on March 31, 2010, contesting Conduct Report 1867465 and complaining that the conduct report was written for retaliation and that Pollard illegally upheld the retaliation. ICE Francois investigated Maus' claim and found that Maus did not challenge any procedures in the conduct report. Francois noted that to establish a claim of retaliation, the inmate must demonstrate 1) a chronological order of events from which retaliation could be inferred; and 2) that retaliation was a motivating factor behind the staff member's conduct. Francois found that Maus failed to do this and therefore his claim of retaliation failed. On March 31, 2010, Francois rejected GBCI-2010-6993 pursuant to Wis. Admin. Code § DOC 310.11(5)(c), because the "inmate does not allege sufficient

facts upon which redress may be made." Maus appealed the decision to the reviewing authority and on April 8, 2010, the reviewing authority found the complaint was appropriately rejected

**L. Maus' court cases**

The filing fee for Wisconsin Court of Appeals case No. 08-AP-2436 was paid via payments on October 21, 2008 and October 31, 2008. In 08-AP-2436, Maus appealed Langlade County circuit court case No. 2008-CV-86, where the court granted summary judgment dismissing his complaint against Marie Berner alleging she defamed him by publishing articles in the Antigo Daily Journal related to an armed robbery of a rural Antigo home in 2005. The circuit court filed an amended judgment deeming the case frivolous. The Wisconsin Court of Appeals summarily affirmed.

In Wisconsin Court of Appeals case No. 08-AP-2432, Maus appealed his conviction in Langlade County Case No. 2007-CF-116. Maus was convicted of two counts of attempted battery by a prisoner, as a repeater, contrary to Wis. Stat. §§ 940.20(1), 939.20(1), and 939.62(1)(b). The Wisconsin Court of Appeals summarily affirmed Maus' convictions concluding that "there is no arguable merit to any issue that could be raised on appeal."

In Langlade County case No. 05-CF-10, Maus was convicted of violating Wis. Stat. § 943.10(2)(a), Burglary-Armed with Dangerous Weapon, 943.32(2), Armed Robbery with Threat of Force, and 946.49(1)(b), Felony Bail Jumping.

Maus avers that on February 19, 2010, he lost Case No. 10-C-15 because he could not get his legal files out of the property room from Schiller so he could properly represent himself in court.

# III. ANALYSIS

## A. Relevant Law

### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code

specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the inmate complaint examiner (ICE) within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than 14 days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within 10 days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within 10 days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

### 2. Retaliation

To prove retaliation, the plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment

activity in the future"; and (3) a causal connection between the two. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct. *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Mere speculation is not sufficient to stave off summary judgment. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008). Moreover, at summary judgment "mere temporal proximity is not enough to establish a genuine issue of material fact." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004)).

### 3. Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Alston v. Debruyn*, 13 F.3d 1036, 1040-41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Even if the

inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail

absent identification of some injury linked to the deprivation. *Lewis*, 518 U.S. at 353 n.4.

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* at 351. Moreover, the injury requirement is not satisfied by all types of frustrated legal claims.

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355. To establish an "actual injury," an inmate must show that an attempt to pursue

nonfrivolous litigation was hindered by unjustified acts or conditions caused by the defendants. *See*

*Tarpley v. Allen County, Ind.*, 312 F.3d 895, 899 (7th Cir. 2002).

**B. Law Library Claims**

Maus claims that Pollard retaliated, or threatened to retaliate, against him for writing

Governor Doyle to complain about the amount of library time GBCI inmates receive. However, this

claim fails because it undisputed that Maus did not file any ICRS offender complaint raising the

issue and therefore, he failed to exhaust administrative remedies as to the claim. *See* 42 U.S.C.

§ 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Maus claims that Mohr, Pollard, Stutleen, and Doruff blocked his access to the courts by ignoring his complaints about only receiving 20 minutes law library time. He also claims that Mohr and Pollard denied him access to the courts by rejecting GBCI-2009-3904, and that Stutleen and Doruff did not increase his library time after Maus wrote them letters. However, Maus did not allege an actual injury relative to these claims and therefore, the defendants are entitled to summary judgment. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Maus claims that Holterman, Doruff, Walton, Stutleen, Mohr, Pollard, Gozinske, and Smith conspired to retaliate against him for refusing to sign up for the law library computers and that Walton retaliated by writing Conduct Report 1968080 for refusing to sign up. Maus asserts that he received Conduct Report 1968080 for complaining about the policy, while the defendants maintain that he received the conduct report for violating the policy. However, it is undisputed that he did refuse to sign up for the law library. The fact that he violated the policy dooms Maus' claim. *See Spiegla*, 471 F.3d at 943. Moreover, Maus does not identify that he engaged in a First Amendment protected activity.

Finally, Maus claims that Walton, Doruff, Stutleen, Pollard, Mohr, Gozinske, and Smith conspired to retaliated against him for giving legal advice in the law library, and that Walton retaliated by kicking him out of the law library and issuing him Conduct Report 1969086. However, it is undisputed that on February 27, 2009, Walton observed Maus helping another inmate with his legal work in the law library and that on the same day, he issued Maus Conduct Report 1969086. Similar to the above claim, this claim fails because Maus admittedly violated a valid GBCI policy.

**C. Denial of Legal Property Claims**

Maus claims that Schiller denied him access to the courts by refusing to bring him his legal property between October 13, 2008 and November 2, 2008; that Mohr, Gozinkse, and Smith conspired with Schiller by dismissing GBCI-2008-27769; and that he had to file a motion for extension of time to file a brief in Wisconsin Court of Appeals Case No. 2008-AP-2432 as a result of being denied his legal property. However, it is undisputed that Schiller was out of the institution during the relevant time period and that the other defendants took prompt action once Maus filed his offender complaint. Moreover, Maus cannot maintain an access to the courts claim based on Case No. 2008-AP-2432, which is the appeal of his criminal conviction for two counts of attempted battery by a prisoner, because he has not shown that the criminal conviction he appealed was invalidated. *See Hoard v. Reddy*, 175 F.3d 531, 532-33 (7th Cir. 1999).

Next, Maus claims that Process, Lesatz, Stutleen, Mohr, Pollard, Gozinske, and Smith conspired to deny him access to the courts by withholding a box of his legal materials consisting of videotapes and documents, that Process blocked his access to the courts by destroying the box of legal materials after Maus refused to send them out of the institution, and that he was convicted in Case No. 05-CF-10 because he was denied the box of legal materials. However, as with Case No. 2008-AP-2432, Maus cannot maintain this claim because he has not shown that 05-CF-10 has been invalidated. *See id.*

Maus claims that Lesatz, Process, Pollard, Mohr, Gozinske, and Smith conspired to block his access to courts by withholding two DVD's sent to him in Case Number 09-CV-42. However, Maus did not exhaust this claim. Although he filed two offender complaints mentioning the DVD's, he did not allege that he was not allowed to view the DVD's, the issue he complains of here. Morever, the second offender complaint, GBCI-2010-1576, did not include a timely appeal

to the CCE and therefore, was not properly exhausted even if construed to cover this claim. *See Pozo*, 286 F.3d at 1023.

Maus also claims that Schiller, Mohr, Cooper, Schultz, Baenen, Campbell, Pollard, Gozinske, and Smith conspired to block his access to court by refusing to bring his legal materials to him in segregation between January and March 2010. He claims he lost Case No. 09-C-15 as a result of not having access to his legal materials while in segregation. However, it is undisputed that Schiller did not bring Maus his property in segregation because Maus failed to follow the segregation rules regarding legal property. As soon as he agreed to comply with the segregation rules and allow the staples to be removed from his legal documents, he received his property. *See Rodriguez v. Briley*, 403 F.3d 952, 952-53 (7th Cir. 2005).

Maus claims that Cooper blocked his access to the courts on March 19, 2010, by having officers search his cell and taking all of his legal materials except for two paper bags. However, Maus has not identified any prejudice or injury suffered as a result of the cell search. Thus, this claim fails.

**D. Conduct Report Number 2075277**

Maus claims that Lindmier retaliated by placing him in TLU for 34 days because Maus threatened to sue Process and Lesatz for denying him access to his two DVDs and that Lindmier wrote Maus Conduct Report #2075277 to cover up the alleged retaliation, fabricating allegations that Maus strong-armed other inmates for their canteen items. Maus further claims that Schultz conspired with Lindmier by finding Maus guilty on Conduct Report #2075277 and giving him 360 days disciplinary separation; Baenen joined the conspiracy by affirming the disposition; Mohr, Warden Pollard, Gozinske, and Smith joined the conspiracy by dismissing GBCI-2010-4632;

Zimonick joined the conspiracy by telling Mohr he was Maus' advocate at the hearing; and Delvaux joined the conspiracy by falsely claiming Maus never submitted a witness list.

However, the undisputed facts reveals that Lindmier had no knowledge that Maus threatened to sue Process and Lesatz with regard to the DVDs and therefore, could not have issued him the conduct report on that basis. It is further undisputed that Maus was issued Conduct Report 2075277 for strong arming inmates Bowers and Allen following an investigation that included marking canteen items with an invisible marker and witness statements from three confidential informants. On the basis on this investigation, Lindmier believed it was more likely than not that Maus threatened and stole from the inmates and he issued Maus the conduct report for those charges. In short, the undisputed facts do not support a finding that Maus was issued the conduct report based on a retaliatory conspiracy but rather based on evidence obtained during the investigation.

Maus also claims that Schultz retaliated against him as the hearing officer on conduct report because he held the hearing without Maus' advocate or witnesses present and that when Maus threatened to amend this lawsuit to add Schultz as a defendant, he retaliated by threatening to lock Maus in his cell naked, have Maus assaulted by officers, and take away all of his legal property. Maus also claims that Cooper and Pollard conspired with Schultz by not responding to Maus' letters regarding Schultz' actions and that Mohr did nothing on the inmate complaint Maus filed regarding Schultz' action at the disciplinary hearing. However, Maus did not exhaust his claim that Schultz retaliated when Maus threatened to add him to this lawsuit because he did not file an appeal to the CCE on that offender complaint, GBCI-2010-3883. Moreover, it is undisputed that Maus' witnesses and advocate were present at the hearing on Conduct Report 2075277.

Finally, Maus claims that retaliated against him by issuing Conduct Report 2050012 in retaliation for Maus writing letters to Pollard, Cooper, and Doyle regarding Schultz' alleged conduct toward Maus during the disciplinary hearing for Conduct Report 2075277. Maus claims that Campbell conspired with Schultz to retaliate against Maus by finding him guilty of the conduct report and taking away 60 days of canteen as a disposition, that Pollard joined the conspiracy by affirming that decision, and that Mohr and Pollard conspired to retaliate against him by rejecting his inmate complaint relating to the conduct report, GBCI-2010-6447.

Schultz issued Maus Conduct Report 2050012 based on his conduct at the hearing on Conduct Report 2075277. Specifically, Schultz alleged that Maus violated the rules against threats, disobeying orders, disrespect, and disruptive conduct at the hearing. According to Maus, at no time during the hearing on Conduct Report 2075277 did he yell, scream, or otherwise disrupt the hearing. However, Maus has not presented evidence that Schultz was motivated by retaliation in writing Conduct Reprot 2050012 by retaliation. Maus also does not dispute that he was disrespectful at the hearing on 2075277. Moreover, there is no evidence that Campbell and Pollard conspired to cover up any retaliation by finding Maud guilty of the 2050012. Rather, the evidence shows that Maus was found guilty of the conduct report because the evidence showed it was more likely than not that he committed the alleged violations.

### E. Retaliation for Filing this Lawsuit Claim

Maus claims that Swiekatowski, Pollard, Erickson, Mohr, Gozinske, and Smith retaliated against him for filing this lawsuit, beginning in January 2010. He alleges he sent a copy of this lawsuit to the business office in order to pay the filing fee and mail out the suit, he believes that Kamphuis photocopied the lawsuit and sent a copy to Pollard and Erickson. Maus further

alleges that he believes two officers who searched his cell read his lawsuit and told Pollard about it and that, subsequently, Pollard and Erickson retaliated against him for filing the lawsuit by having Swiekatowski illegally move him out of HSU to the Hill Segregation unit. Maus claims Mohr, Gozinske, and Smith joined the conspiracy by participating in the decision to dismiss the inmate complaint he filed alleging his move to the segregation unit was retaliation, GBCI-2010-3545.

It is undisputed that on January 9, 2010, Maus was placed in TLU in the STEP unit pending investigation into Conduct Report 2075277, that he was strong-arming two inmates out of their canteen items. On February 2, 2010, he was moved from the STEP unit to the segregation unit, but maintained his TLU status. Institution records show that Maus was never housed in the HSU of GBCI. It is undisputed that Pollard and Erickson did not have knowledge of this lawsuit in January or February 2010. Maus' belief that Pollard and Erickson had his cell searched and had him moved into segregation in retaliation for filing this lawsuit is not support by any evidence. Thus, this claim will be dismissed.

**F. Inmate Account and GBCI Business Office Claim**

Maus claims that Highly denied him access to the courts by closing his inmate account and refusing to mail out a brief for Wisconsin Court of Appeals cases 08-AP-2432, and a filing fee for case 08-AP-2436, in October and November of 2008. He also claims that Mohr, Pollard, Gozinske, and Smith conspired with Highly to block his access to the courts by participating in the decision to dismiss Maus' two inmate complaints regarding the GBCI mailroom, GBCI-2008-28984 and GBCI-2008-29715.

However, as stated *supra.*, Maus cannot base an access to the courts claim on Case Number 08-AP-2432 because it is a challenge to a criminal conviction that has not been overturned.

As for Case Number 08-AP-2436, there is no injury alleged because that case was deemed frivolous by the circuit court and because Maus merely alleges that the mailroom would not mail out the filing fee after the filing fee had been paid in full and the case decided on the merits.

Next, Maus claims that Kamphuis illegally removed $1.50 from his inmate account and sent it to the Clerk of Court as a payment on the filing fee for Eastern District of Wisconsin Case Number 09-C-42 when Maus had already paid the entire filing fee. He further claims that Mohr, Pollard, Gozinske, and Smith conspired with Kamphuis based on their decisions to dismiss the inmate complaint Maus filed regarding the $1.50 filing fee, GBCI-2010-5846. However, Maus does not claim that the illegal $1.50 withdrawal was retaliatory or denied him access to the courts. In any event, the inmate complaint he filed with regard to the issue was dismissed as untimely and not addressed on the merits, so he also failed to exhaust administrative remedies.

Next, Maus claims that Huck charged him $7.50 postage to mail a package that weighed only 1.9 oz and should have cost only $2.00 to mail. He further claims that Mohr, Baenen, Gozinske, and Smith conspired with Huck based on their decisions to dismiss the inmate complaint Maus filed regarding the mailing charge, GBCI-2010-5203. However, similar to his $1.50 withdrawal claim, Maus does not claim that the alleged overcharge denied him access to the courts or was retaliatory. Although the defendants maintain the $7.50 charge was proper, if anything, any overcharge was an error.

## G. Conduct Report Number 2075011

Maus claims that Novitski issued Conduct Report 2075011 in retaliation for Maus ordering canteen while on TLU. He further claims that Schultz illegally found him guilty of the conduct report and took 30 days canteen away. However, it is undisputed that Maus never filed an

ICRS offender complaint related to this issue and, therefore, he failed to exhaust administrative remedies.

### H. Conduct Report Number 1867465

Maus claims that Derocha issued him Conduct Report 1867465 on March 4, 2010, in retaliation for writing her a letter informing her that it is none of her business how much jail credit he received on his conviction for case No. 05-CF-10 and that he would file criminal charges against her for practicing law without a license. Maus claims Schultz conspired with Derocha by finding him guilty on the conduct report and that Pollard joined the conspiracy by affirming the decision on the conduct report. He also claims that Francois conspired by rejecting the inmate complaint Maus wrote claiming the conduct report was issued as retaliation, GBCI-2010-6993.

It is undisputed that on March 4, 2010, Derocha received a note from Maus stating "I need you to get your facts straight before you go writing any letter to any judge." "You keep your nose out of my business before you wind up in outside court facing criminal charges." He further stated in his letter that Derocha was "nothing more than a paper pusher." As a result of Maus' letter, Derocha issued Maus Conduct Report 1867465 for violation of Wis. Admin. Code §§ DOC 303.16, threats, and DOC 303.25, disrespect. Derocha avers that she wrote the conduct report due to her belief that Maus made written statements threatening her with criminal charges for performing her duties and that he did so with the intent to harass and mentally harm Derocha.

Maus has not presented evidence that Derocha issued the conduct report for any improper, retaliatory reason. Even if he had, the charges in the conduct report are supported by the content of Maus' letter to Derocha. Thus, this retaliation claim fails.

### I. Summary

In sum, and for the reasons set forth herein, the defendants are entitled to summary judgment on all of Maus' claims.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket No. 56) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing this action.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2011.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**